IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ERIC SCOTT MYERS,
      Plaintiff,

vs.                               Case No.:  5:12cv259/RS/EMT

STATE OF FLORIDA, et al.,
      Defendants.

_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Plaintiff's Fourth Amended Complaint filed pursuant to 42 U.S.C. § 1983 (doc. 45).  Leave to proceed in forma pauperis has been granted (doc. 8).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b).   After careful consideration of all issues raised by Plaintiff, it is the opinion of the undersigned that the majority of Plaintiff's claims are subject to dismissal.

I.      BACKGROUND

Plaintiff is prisoner of the Florida Department of Corrections ("FDOC"), and is currently housed at Holmes Correctional Institution ("Holmes C.I.") (doc. 45 at 2).  He names twenty-seven (27) Defendants in this action, including Governor Rick Scott, former FDOC Secretary Kenneth Tucker, several employees of the FDOC's Office of the Secretary, an employee of Continental Insurance Company (Jonathan C. Olson), the Warden of Holmes C.I., and eighteen (18) officers and employees of Holmes C.I. (*id.* at 2–4).[1]  Plaintiff claims that since his arrival at Holmes C.I. in October of 2009, Defendants, individually, and as members of a conspiracy, violated the First,

_____

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those Plaintiff may have assigned.

Fourth, Fifth, and Fourteenth Amendments by placing him in administrative confinement without due process, depriving him of his personal property without due process, depriving him of gain time based upon fabricated disciplinary reports, and denying him access to the courts (*id.* at 7–22). Plaintiff also asserts an Eighth Amendment excessive force claim against one Defendant, Sergeant Watkins (*id.* at 15). Plaintiff additionally brings state law claims of slander, libel, and defamation (*id.* at 7–22). Plaintiff seeks "any and all equitable and adequate relief this Honorable Court deems applicable" (*id.* at 22).

## II.     STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). To survive § 1915(e)(2)(B)(ii), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare

assertions" that "amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679. Finally, in civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . . A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted).

III.    ANALYSIS

   A.    Due Process—Placement in Administrative Confinement

Plaintiff alleges that on October 2, 2009, a prison official at the Northwest Florida Reception Center placed him in full body restraints and a holding cell, searched and inventoried all of his personal property, and then placed him and his property in a van to be transported to Holmes C.I. (doc. 45 at 7–8). He alleges upon his arrival at Holmes C.I., he was separated from his property and placed in administrative confinement until October 5, 2009, without any explanation of the reason for his confinement or an opportunity to be heard (*id.* at 8). He states two (2) days later, on October 7, 2009, he was again placed in administrative confinement without any explanation of the reason for his confinement or an opportunity to be heard (*id.*). Plaintiff alleges he was subsequently released, but almost immediately thereafter, he was again placed in administrative confinement for fifty (50) days, without any explanation of the reason for his confinement or an opportunity to be heard (*id.* at 10).

The threshold issue is whether Plaintiff has a liberty interest in freedom from placement in administrative confinement. A liberty interest protected by the Fourteenth Amendment may arise from the Due Process Clause itself, or state law may create a liberty interest. *See* Sandin v. Conner, 515 U.S. 472, 483–84, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). The Supreme Court recognized that States may create liberty interests which are protected by the Due Process Clause, but these

interests are generally limited to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*, 515 U.S. at 484. Examples of such cases are where an inmate is involuntarily transferred to a mental hospital, or where an inmate is involuntarily subjected to the administration of pyschotropic drugs. *Id.* (citations omitted). Although "prisoners do not shed all constitutional rights at the prison gate, . . . lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* at 485 (citations, quotation marks, and alteration omitted). Confinement apart from the general population, for reasons of security or the order and effective management of the institution, is a necessary limitation of privileges and rights that incarceration demands.

Addressing the issue of an inmate's confinement in administrative segregation, the Supreme Court has noted that "[i]t is plain that the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." Hewitt v. Helms, 459 U.S. 460, 468, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983), *receded from on other grounds by* Sandin, 515 U.S. at 481 (concluding that the focus of the liberty interest inquiry should be on the nature of the deprivation rather than on the language of the state prison regulation).

The court advised Plaintiff of this standard and the insufficiency of his factual allegations in a prior order, and he was provided an opportunity to amend his allegations to state a plausible due process claim (doc. 37). However, his allegations still fail to show that his placement in administrative confinement exposed him conditions substantially different from those experienced by inmates in the general population of the prison. Further, the FDOC's administrative policy describing the conditions of administrative confinement demonstrates that the conditions are substantially the same as those experienced by the general prison population. *See* Fla. Admin. Code r. 33-602.220. Under Sandin and its progeny, Plaintiff's periodic placements in administrative confinement do not represent a "dramatic departure" from the normal conditions of his confinement and are therefore is not actionable. *See* Sandin, 515 U.S. at 484, 486 (plaintiff's disciplinary,

segregated confinement for thirty (30) days "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"); <u>Rodgers v. Singletary</u>, 142 F.3d 1252 (11th Cir. 1998) (no liberty interest existed when plaintiff was kept in administrative confinement for two (2) months pending the resolution of criminal charges arising from an altercation with a corrections officer); *see also* <u>Al-Amin v. Donald</u>, 165 F. App'x 733 (11th Cir. 2006) (unpublished) (inmate's original placement in administrative segregation for six (6) months and reassignment six (6) months later for continued confinement in administrative segregation did not unexpectedly exceed his sentence in a manner that would evoke the protections the Due Process Clause); <u>Pray v. Brown</u>, No. 5:04cv110/SPM/AK, 2006 WL 1653352, at *9 (N.D. Fla. June 6, 2006) (60-day administrative confinement "cannot show deprivation of a protected liberty interest") (citing <u>Sandin</u>, <u>Rodgers</u>, and <u>Al–Amin</u>); <u>Skinner v. Cunningham</u>, 430 F.3d 483, 487 (1st Cir. 2005) (liberty interest was not implicated because, among other reasons, the duration of the plaintiff's (approximate) 6-week segregation, without a hearing, "was not excessive"); <u>Lekas v. Briley</u>, 405 F.3d 602, 612 (7th Cir. 2005) (90-day disciplinary segregation with severe restrictions on exercise, group worship, work, and educational opportunities not atypical or significant); <u>Sealey v. Giltner</u>, 197 F.3d 578, 587–89 (2d Cir. 1999) (finding no implicated liberty interest in being placed in administrative segregation for an aggregate interval that reached 101 days); <u>Beverati v. Smith</u>, 120 F.3d 500, 504 (4th Cir. 1997) (no liberty interest implicated as to six (6) months of administrative segregation); <u>Pichardo v. Kinker</u>, 73 F.3d 612, 613 (5th Cir. 1996) (inmate's placement and continued confinement in administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for a constitutional claim"); <u>Rimmer-Bey v. Brown</u>, 62 F.3d 789, 791 (6th Cir. 1995) (inmate's placement in administrative segregation after thirty (30) days of punitive detention was not an atypical and significant hardship). Therefore, Plaintiff's allegations fail to state a plausible due process claim with regard to his periodic placement in administrative confinement. This is so despite Plaintiff's contention that prison officials failed to follow mandatory procedures set forth in the FDOC's administrative policies, because the Supreme Court made clear in <u>Sandin</u> that mandatory language in state statutes and prison regulations is insufficient to create a protected liberty interest. *See* <u>Sandin</u>, 515 U.S. at 483–84. Accordingly, his claims concerning

his placement in administrative confinement should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

      B.      Due Process—Deprivations of Property

Plaintiff alleges that during his placement in administrative confinement in October of 2009, Sergeant Moore separated his personal property into two parts and determined that one part constituted contraband (including, as characterized by Plaintiff, "authorized literature," as well as radios, headphones, glasses, and eating utensils) (doc. 45 at 9). Plaintiff states Moore told him the items would be returned to him if he produced personal property receipts for them (*id.*). Plaintiff alleges he subsequently gave Moore personal property receipts for the items, and Moore took the receipts to photocopy them but never returned them (*id.*). Plaintiff alleges Moore violated FDOC policy by refusing to permit him to either keep the confiscated items or send them to family (*id.*). He alleges Moore was affiliated with a local pawn shop, and Plaintiff speculates Moore likely pawned the items (*id.* at 9–10).

Plaintiff additionally alleges that on August 8, 2011, Captain Thompson placed him in administrative confinement and assured him he would personally guarantee that Plaintiff's property would be secured (doc. 45 at 18). Plaintiff alleges Thompson failed to secure his property, which resulted in other inmates' stealing his canteen items (*id.* at 18–19).

Plaintiff further alleges that on September 27, 2011, Officer Truman deprived him of his personal property by destroying his "active case material" and giving his personal property (a sweatshirt, long johns, three pairs of socks, and two pairs of shorts (*see* doc. 34 at 16)) to another inmate (doc. 45 at 16). Plaintiff alleges that on October 23, 2011, Officer Truman and Sergeant McDuffey gave his "personal mail" to another inmate (*id.*). And Plaintiff alleges on December 12, 2011 and March 15, 2012, Sergeant Moore confiscated some items of his property (*id.* at 16–17).

Plaintiff cannot show a constitutional violation with respect to the deprivation of his property. The negligent deprivation of property does not amount to a constitutional violation actionable under § 1983. *See* Daniels v. Williams, 474 U.S. 327, 330, 333, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986) (holding that the Due Process Clause is not implicated by a state official's negligent act causing unintended loss of or injury to life, liberty, or property). Additionally, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the

procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). The State of Florida provides Plaintiff with an adequate post-deprivation remedy for the loss of his property. A prisoner may file a tort claim action in state court in order to recover damages for property losses. *See* Fla. Stat. § 768.28 (2011). Because Plaintiff has access to an adequate post-deprivation remedy, no federal procedural due process violation has occurred. *See* Case v. Eslinger, 555 F.3d 1317, 1331 (11th Cir. 2009) ("We have recognized that 'a civil cause of action for wrongful conversion of personal property' under state law is a sufficient postdeprivation remedy when it extends to unauthorized seizures of personal property by state officers.") (quoting Lindsey v. Storey, 936 F.2d 554, 561 (11th Cir. 1991)).

Moreover, Plaintiff's interest in his property is not entitled to substantive due process protection. The substantive component of the Due Process Clause protects only "fundamental" rights. *See* McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) (citing Palko v. Connecticut, 302 U.S. 319, 325, 58 S. Ct. 149, 82 L. Ed. 288 (1937)). Fundamental rights "are protected against certain government actions regardless of the fairness of the procedures used to implement them." McKinney, 20 F.3d at 1556 (internal quotation omitted). In contrast, "areas in which substantive rights are created only by state law . . . are not subject to substantive due process protection . . . because substantive due process rights are created only by the Constitution." *Id.* (internal quotation omitted). Such state law-based rights can be rescinded "so long as the elements of procedural—not substantive—due process are observed." *Id.* Property interests like those that Plaintiff enjoys in his personal property are created and defined by state law rather than the Constitution. *See* Greenbriar Village, L.L.C. v. Mountain Brook City, 345 F.3d 1258, 1262 (11th Cir. 2003) (citing Board of Regents v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)). They are not fundamental rights, and thus they are not entitled to substantive due process protection. *See id.* at 1263 ("[N]on-legislative deprivations of state- created rights . . . cannot support a substantive due process claim . . . ."); *see also* Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 229, 106 S. Ct. 507, 88 L. Ed. 2d 523 (1985) (Powell, J., concurring) ("While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution . . . substantive due process rights are created only by the Constitution.").

For the aforementioned reasons, Plaintiff cannot state a plausible federal due process claim based upon the taking of his personal property. Accordingly, these claims should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

C.    Challenges to Disciplinary Reports

Plaintiff seeks to challenge several disciplinary reports issued against him by Defendants, on the ground that they were based upon false allegations. He challenges disciplinary report log #107-100121, issued by Defendant Officer Segers on January 21, 2010 (doc. 34 at 13; doc. 45 at 10).[2] He also challenges disciplinary report log #107-101511, issued by Defendants Inspector Coffey, Officer Warren, and Sergeant Wade on September 20, 2010 (doc. 45 at 13–14).[3] Plaintiff additionally challenges a disciplinary report issued by Sergeant Moore and Officer Johnson on January 12, 2011, charging him with making a verbal threat, of which he was found guilty by Officer Hodges and Captain Davis on January 21, 2011 (*see* doc. 34 at 15; doc. 45 at 14). He also challenges a disciplinary report issued by Officer Warren on March 14, 2012, charging him with possession of contraband relating to documents Plaintiff attempted to copy in the law library (doc. 45 at 14).[4] Plaintiff alleges he suffered the loss of gain-time as a result of each of the disciplinary reports (*see* doc. 34 at 12–15; doc. 45 at 10, 13–15).[5]

---

[2] Plaintiff states the disciplinary report charged him with disorderly conduct for yelling in his cell (doc. 45 at 10). He alleges the report was fabricated and intended to punish him for drafting documents citing the Uniform Commercial Code ("UCC") and identifying himself as a priest under the "Order of Phinehas," and an "Israelite identist" (*id.*).

[3] Plaintiff submitted a copy of this disciplinary report as an attachment to a prior complaint (*see* doc. 20-1 at 6–8). It shows that on September 20, 2010, Plaintiff was charged with fraud or attempted fraud, and he lost ninety (90) days of gain-time upon his conviction of the charge. Plaintiff alleges he received this disciplinary report after officials discovered he recorded a "Request for Discovery Conditional Acceptance," in the Official Records of Holmes County, Instrument No. 201030007861, on May 26, 2010 at 2:40 p.m. at Book 463, Pages 312–316, and he recorded an "Affidavit of Injured Third Party" and "Notice of International Claim Administrative Remedy, Notice of Judicial Notification," in the Official Records of Okaloosa County, Instrument No. 2657923, on September 15, 2010 at 1:48 p.m. at Book 2952, Pages 394–396 (*see* doc. 34 at 14; *see also* doc. 20-1 at 13–15, 24–26).

[4] Plaintiff submitted a copy of this disciplinary report as an attachment to a prior complaint (*see* doc. 20-1 at 22–23).

[5] Throughout his Fourth Amended Complaint, Plaintiff refers to the loss of gain time as a loss of wages or earnings (*see* doc. 45 at 10, 12, 13, 14).

The Supreme Court has held that a prisoner in state custody cannot use a section 1983 action to challenge "the fact or duration of his confinement." Preiser v. Rodriguez, 411 U.S. 475, 489, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973); *see also* Wolff v. McDonnell, 418 U.S. 539, 554, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974); Heck v. Humphrey, 512 U.S. 477, 481, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). In Edwards v. Balisok, 520 U.S. 641, 646–48, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997), the Supreme Court held that a prisoner's claim for injunctive relief and monetary damages for the use of constitutionally inadequate procedures in disciplinary proceedings, which resulted in sentence of placement in isolation for ten (10) days, placement in segregation for twenty (20) days, and deprivation of thirty (30) days of good-time credit, necessarily implied the invalidity of the prisoner's punishment, and therefore could not be pursued unless the prisoner had succeeded in having the revocation penalty invalidated.

Here, Plaintiff does not allege he has succeeded in having any of the disciplinary decisions which resulted in the loss of his gain-time overturned or otherwise invalidated. Therefore, his challenges to the validity of those decision must be dismissed without prejudice.

> D.    Denial of Access to Courts

Plaintiff claims Defendants violated his right to access the courts by subjecting his legal documents to inspection and approval before mailing, confiscating documents he attempted to file in the state courts, denying him services of a notary public, and refusing to permit him access to some of his legal material during a state post-conviction proceeding (doc. 45 at 11–12, 16–20).

It is settled law that interference with an inmate's access to the courts is a violation of a First Amendment right actionable under section 1983. *See* Lewis v. Casey, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996); Bounds v. Smith, 430 U.S. 817, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977); Chandler v. Baird, 926 F.2d 1057 (11th Cir. 1991). However, as established in Casey, to successfully allege a constitutional violation based upon a denial of access to courts, Plaintiff must specifically show how he was actually harmed or prejudiced with respect to the litigation in which he was involved. 518 U.S. at 349–51; *see also* Al-Amin v. Smith, 511 F.3d 1317, 1332 (11th Cir. 2008). Importantly, "the injury requirement is not satisfied by just any type of frustrated legal claim." Casey, 518 U.S. at 354. Plaintiff must show that he was prejudiced in a criminal appeal or post-conviction matter, or in a civil rights action under 42 U.S.C. § 1983 "to vindicate 'basic

constitutional rights.'" *Id.* (quoting <u>Wolff v. McDonnell</u>, 418 U.S. 539, 579, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)). Furthermore, he must allege actual injury "such as a denial or dismissal" and show that presentation of his case was impeded because of Defendant's actions. <u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1290–91 (11th Cir. 1998) (citing <u>Lewis</u>); *see also* <u>Bass v. Singletary</u>, 143 F.3d 1442, 1445–46 (11th Cir. 1998). So long as Plaintiff was able to litigate his claim, he cannot demonstrate that he was unconstitutionally denied access to the courts. <u>Wilson</u>, 163 F.3d at 1291. Moreover, Plaintiff cannot show an injury unless he shows that the case he was unable to pursue had arguable merit. <u>Casey</u>, 581 U.S. at 353 n.3; <u>Wilson</u>,163 F.3d at 1291.

Here, Plaintiff alleges that in late 2009, Inspector Coffey told him he would be punished if he drafted any UCC-related documents (doc. 45 at 10). Plaintiff alleges he drafted a "commercial complaint by affidavit" and recorded it in the official records on May 26, 2010, to "secure my priority interest" as a "damaged and injured Third Party intervener" in a future tort claim against FDOC officials (*id.* at 11, 19). Plaintiff alleges he filed the affidavit in his three criminal cases in Okaloosa County, Case Nos. 01-CF-1602, 03-CF-1281, and 03-CF-2275, in support of a "Request for Discovery Conditional Acceptance" (*id.*).[6] He states the State of Florida "dishonored the instrument and presentment and assumed the position of default voluntarily," so he filed a "Notice of Dishonor and Opportunity to Cure and Correct Acceptance" (*id.*). Plaintiff states the State of Florida again defaulted and "denied to perform as stipulated," so he filed an "affidavit of default" (*id.*).[7] He alleges the State of Florida "accepted" the document, thus "securing their position of dishonor and default" (*id.*). Plaintiff states on September 16, 2010, he requested the services of a notary public to notarize a "certified certificate of Non-Response," but Officer Hodges threatened to punish him if he attempted to file such documents (*id.* at 11–12). Plaintiff alleges the next day, on September 17, 2010, he received documentation from the Okaloosa County Clerk of Court that his "Initial Complaint, Injured Third Party, Estoppel Notice All Parties" had been recorded in the

---

[6] Plaintiff submitted a copy of this document with a prior complaint (doc. 20-1 at 25–57).

[7] Plaintiff submitted a copy of this document with a prior complaint (doc. 20-1 at 29–30).

official county records (*id.* at 12).[8]  He alleges he went to the law library on September 20, 2010, to produce a copy of the "official record" he had received from the Okaloosa Court, so he could file it in support of a motion for post-conviction relief in his three criminal cases, but Officer Warren, Sergeant Wade, and Inspector Coffey interfered with his ability to do so, and issued a disciplinary report for filing fraudulent UCC materials (*id.* at 13) (this is the disciplinary report referenced *supra* in footnote 3).

Plaintiff alleges in October of 2011, Sergeant Moore and Officer Johnson refused to permit him to take envelopes, stamps, pens, and "any legal material they deemed to be inadequate" to the Okaloosa County Jail, where he was housed during a post-conviction evidentiary hearing (doc. 45 at 16).  Plaintiff alleges he subpoenaed Warden Whitfield to provide the materials, but they were never delivered (*id.*).

Plaintiff additionally alleges that on March 14, 2012, Officer Warren confiscated a "Declaratory Judgment" and refused to notarize a "Certificate of Non-Response" (doc. 45 at 16). Plaintiff alleges on March 15, 2012, Sergeant Moore placed him in administrative confinement after Officer Russ and Officer Kent (supervisor of the institutional mail room) censored his legal documents and confiscated  several of them (*id.* at 19).  He alleges that Jackson, an Assistant Warden of Programs, refused to return this "active legal material," including a "Certificate of Service," "Notice of Dishonor," and several affidavits (*see* doc. 34 at 16; doc. 45 at 16–17).  Plaintiff alleges as a result of the Defendants' censoring his legal documents and failing to mail them, the Florida First District Court of Appeal ("First DCA") dismissed an appeal for his failure to serve other parties, including the Florida Attorney General (doc. 45 at 19).

---

[8] Plaintiff submitted a copy of this document with a prior complaint (doc. 20-1 at 24–26).  Plaintiff included the case numbers of his three criminal cases on the document (*id.*).  The document purports to be a "Notice of International Claim Administrative Remedy," and in it, Plaintiff contends he was unlawfully and fraudulently convicted, and claims he is entitlement to monetary damages from the State of Florida for his conviction and incarceration, as well as several alleged constitutional violations that occurred during his incarceration, in the amount of over $500,000,000.00 (*id.* at 26).  The document provides that the State of Florida shall satisfy its debt to Plaintiff by giving him 500 acres of property (250 acres of "Gulf-front and/or Ocean-front" property and 250 acres of "prime timber land to include rivers and creeks") (*id.*). The document refers to Plaintiff as a creditor of the State, and refers to the document itself as a "certified registered instrument and/or contract" (*id.*).  The document states that if the State fails to file a "rebuttal affidavit" within 10 days, a "Default and Dishonor" will result, and the State will be required to "release all documents, bonds, and orders(s) ab initio" (*id.* at 25–26).

Plaintiff also alleges Assistant Warden of Operations Flowers instructed the notaries public on staff (including Officer Connolly, Officer Warren, and Officer Hodges) to refuse notary services to Plaintiff (doc. 45 at 20). Plaintiff alleges when he notified a "bonding surety," specifically Jonathan C. Olson, from CNA Surety/Continental Insurance Company, that notary publics were refusing to authenticate an affidavit, Assistant Warden Flowers informed Mr. Olson that Plaintiff was filing fraudulent UCC materials and had been disciplined for doing so (*id.*). Plaintiff alleges as a result, Mr. Olson declined to "execute sureties obligation" for damages and injuries caused by FDOC officials in the performance of their duties (*id.*).

Plaintiff's allegations fail to show he suffered injury, in the constitutional sense, as a result of Defendants' conduct. The only state court action in which Plaintiff alleges he suffered injury is an appeal pending in the First DCA in 2012 (doc. 45 at 19). The court takes judicial notice of information available on the database maintained by the Okaloosa County Clerk of Court, http://www.clerkofcourts.cc, and the First DCA, http://www.1dca.org.[9] The online docket of the Okaloosa County Circuit Court, Case Nos. 2003-CF-2275, 2003-CF-1281, and 2001-CF-1602, indicates that on April 4, 2012, Plaintiff filed a notice of appeal of an order denying post-conviction relief in those cases, and the First DCA assigned Case Nos. 1D12-456 and 1D121850. *See* http://www.clerkofcourts.cc, search Case Numbers 2003-CF-002275, 2003-CF-001281, and 2001-CF-001602. The online docket of Myers v. State, Case No. 1D12-456 shows that on June 18, 2012, the First DCA dismissed Plaintiff's appeal of the denial of a state post-conviction motion for Plaintiff's failure to file an initial brief. *See* Myers, No. 1D12-456, Order (Fla. 1st DCA June 18, 2012). However, upon Plaintiff's filing two motions for rehearing (one of which he titled a demand for declaratory judgment), the First DCA advised Plaintiff he could seek reinstatement of the appeal by filing a motion for reinstatement accompanied by an initial brief (*see* doc. 20-1 at 27). *See*

---

[9] *See* Fed. R. Evid. 201; United States v. Berrojo, 628 F.3d 368, 369 (5th Cir. 1980) ("The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it."); *see also* Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (district court permissibly looked to docket sheets in ruling on motion to dismiss because "docket sheets are public records of which the court could take judicial notice"); In re Salem, 465 F.3d 767, 771 (7th Cir. 2006) (taking judicial notice of state court dockets and opinions); Dawson v. Mahoney, 451 F.3d 550, 551 (9th Cir. 2006) (taking judicial notice of state court orders and proceedings); United States v. Mercado, 412 F.3d 243, 247–48 (1st Cir. 2005) (taking judicial notice of state court docket entries).

<u>Myers</u>, No. 1D12-456, Order (Fla. 1st DCA Oct. 3, 2012). Plaintiff filed a motion for reinstatement, but it was denied, because he failed to accompany the motion with an initial brief. *See* <u>Myers</u>, No. 1D12-456, Order (Fla. 1st DCA Dec. 14, 2012). Plaintiff does not allege prison officials confiscated or otherwise prohibited him from filing an initial brief in that case. Moreover, to the extent he sought to file UCC-related materials in his post-conviction appeal, he cannot show that the documents and arguments related thereto had arguable merit. *See, e.g.*, <u>Harris v. Wands</u>, 410 F. App'x 145, 146–47 (10th Cir. 2011) (unpublished) (inmate's challenge to conviction and sentence on UCC grounds was frivolous); <u>Schlager v. Beard</u>, 398 F. App'x 699, 701 (3d Cir. 2010) (unpublished) (inmate's claim that prison officials denied his First Amendment right of access to the courts by confiscating Uniform Commercial Code (UCC) documents from his cell and mail, failed to state a First Amendment claim, because argument that inmate sought to pursue in state court, that he was entitled to release from prison as "secured party sovereign," was the epitome of frivolous); <u>United States v. Holloway</u>, 11 F. App'x 398, 400 (6th Cir. 2001) (unpublished) (UCC is not applicable in criminal proceedings).

With regard to Case No. 1D12-1850, the online docket shows that even though Plaintiff's appeal in that case was dismissed by the First DCA on June 8, 2012, for Plaintiff's failure to file an amended notice of appeal with a proper certificate of service (*see* <u>Myers</u>, No. 1D12-1850, Order (Fla. 1st DCA July 8, 2012)), and the First DCA subsequently twice ordered Plaintiff to file certificates of service demonstrating he served his later-filed motions on the opposing party (*see* <u>Myers</u>, No. 1D12-1850, Order (Fla. 1st DCA June 22, 2012) and Order (Fla. 1st DCA June 27, 2012)), Plaintiff complied with the orders, and the court reinstated the appeal. *See* <u>Myers</u>, No. 1D12-1850, Order (Fla. 1st DCA July 24, 2012).

Plaintiff's factual allegations fail to show that Defendants' actions impended his ability to present a claim in a criminal appeal, post-conviction matter, or civil rights action. His allegations additionally fail to show that any claim he was pursuing had arguable merit. Therefore, he has failed to state a plausible claim in this 1983 action that he was unconstitutionally denied access to the courts. Accordingly, his First Amendment claims should be dismissed with prejudice.

E.     <u>Conspiracy</u>

Plaintiff's conspiracy claims fail because of the intracorporate conspiracy doctrine. "The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc). "[U]nder the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." Id.; accord Denney v. City of Albany, 247 F.3d 1172, 1190–91 (11th Cir. 2001) (stating "the only two conspirators identified . . . are both City employees; no outsiders are alleged to be involved" and concluding intracorporate conspiracy doctrine barred plaintiffs' § 1985(3) conspiracy claims for deprivation of their equal protection rights). The doctrine applies to public entities such as state agencies and its personnel. See Wright v. Ill. Dep't of Children & Family Servs., 40 F.3d 1492, 1508 (7th Cir. 1994) (holding that intracorporate conspiracy doctrine applies not just to private entities but also to government agencies such as Illinois Department of Children and Family Services); see also Grider v. City of Auburn, Ala., 618 F.3d 1240, 1262–63 (11th Cir. 2010) (intracorporate conspiracy doctrine barred plaintiff's § 1983 conspiracy claims against police officers); Denney, 247 F.3d at 1190 (intracorporate conspiracy doctrine applied to city and its personnel); Rehberg v. Paulk, 611 F.3d 828, 854 (11th Cir. 2010) (concluding intracorporate conspiracy doctrine barred § 1983 conspiracy claim against a county employee); Dickerson v. Alachua Cnty. Comm'n, 200 F.3d 761, 767–68 (11th Cir. 2000) (concluding intracorporate conspiracy doctrine barred plaintiff's § 1985(3) conspiracy claim for interference with his civil rights); Chambliss v. Foote, 562 F.2d 1015 (5th Cir. 1977) (affirming district court's summary judgment opinion applying the intracorporate conspiracy doctrine to bar a § 1985(3) claim against a public university and its officials)[10]; Taylor v. Alabama, 95 F. Supp. 2d 1297, 1317–18 (M.D. Ala. 2000) (doctrine of intracorporate conspiracy barred plaintiff's conspiracy claim against employees of state agency); see also, e.g., Detris v. Coats, 523 F. App'x 612, 615 (11th Cir. 2013)

---

[10] Decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981 are binding as precedent on the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

(unpublished) (intracorporate conspiracy doctrine prohibited § 1983 claim against deputies who allegedly beat arrestee while he was being held in pretrial detention).

In the instant case, all of the alleged conspirators are employees of the FDOC. No outsiders are involved.[11] The subject of their alleged conspiracy—depriving him of his personal property without due process, placing him in administrative confinement without due process, depriving him of gain time based upon fabricated disciplinary reports, and denying him access to the courts by depriving him of legal material and notary services—involved job-related functions well within Defendants' scope of employment as FDOC employees. *See* Grider, 618 F.3d at 1261 (recognizing that one might reasonably believe that violating someone's constitutional rights is never a job-related function or within the scope of a public employee's employment, but holding that the question of whether a defendant acted within the scope of his employment is distinct from whether the defendant acted unconstitutionally; the scope-of-employment inquiry is whether the employee was performing a function that, but for the alleged constitutional infirmity, was within the ambit of the employee's scope of authority (i.e., job-related duties) and in furtherance of the employer's business). Therefore, Plaintiff's conspiracy claims should be dismissed with prejudice.

IV.    CONCLUSION

Plaintiff failed to state a plausible claim for relief with regard to his due process claims concerning his placement in administrative confinement, his due process claims concerning the deprivation of his property, his First Amendment claims concerning his access to the courts, and his conspiracy claims. Therefore, those claims are subject to dismissal with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B). Plaintiff's claims challenging his disciplinary convictions are subject to dismissal without prejudice, pursuant to Heck v. Humphrey, 512 U.S. 477 (1994). The only claim as to which Plaintiff's factual allegations are sufficient to state a plausible claim is his excessive force claim against Sergeant Watkins, regarding Watkins's alleged use of force on September 27,

---

[11] Although Plaintiff names an "outsider" as a Defendant (Jonathon C. Olson from Continental Insurance Company), Plaintiff's factual allegations involving Mr. Olson state only that Mr. Olson was informed by Assistant Warden Flowers that Plaintiff was filing fraudulent commercial documents and had been disciplined for such, and as a result, Mr. Olson refused to "execute sureties obligation . . . for damages and injuries caused by client in the performance of their duties" (doc. 45 at 20). This factual allegation is wholly insufficient to suggest Mr. Olson engaged in a conspiracy with the FDOC Defendants to deprive Plaintiff of his constitutional rights.

2011. Therefore, upon the district court's ruling on this Report and Recommendation, the matter should be referred to the undersigned for further proceedings on that claim.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the following claims against all Defendants be **DISMISSED with prejudice**, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii):

a.      Plaintiff's due process claims concerning his placement in administrative confinement;

b.      Plaintiff's due process claims concerning the deprivation of his property;

c.      Plaintiff's First Amendment claims concerning his access to the courts; and

d.      Plaintiff's conspiracy claims.

2.      That Plaintiff's claims challenging his disciplinary convictions be **DISMISSED without prejudice**, pursuant to Heck v. Humphrey, 512 U.S. 477 (1994);

3.      That this matter be referred to the undersigned for further proceedings on Plaintiff's excessive force claim against Sergeant Watkins regarding Watkins's alleged use of force on September 27, 2011.

At Pensacola, Florida this 17th day of December 2013.

*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**