IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ERIC SCOTT MYERS,
    Plaintiff,

vs.                                  Case No.:  5:12cv259/MW/EMT

SERGEANT WATKINS,
    Defendant.
_____/

## SECOND REPORT AND RECOMMENDATION

    Plaintiff Eric Scott Myers ("Myers"), an inmate of the Florida Department of Corrections ("FDOC"), proceeds pro se and in forma pauperis in this action brought under 42 U.S.C. § 1983. The only federal claim asserted in the Fourth Amended Complaint (doc. 45) that survived the court's statutory screening, pursuant to 28 U.S.C. § 1915(e)(2)(b), is Myers' claim that Defendant Sergeant Watkins used excessive force against him on September 27, 2011 (*see* docs. 45, 49, 52).[1] Myers seeks "damages and compensation for anguish and torment" and "any and all equitable and adequate relief this Honorable Court deems applicable" (doc. 45 at 21, 22).

    Presently before the court is Sergeant Watkins' Motion for Summary Judgment, with an incorporated Statement of Material and Genuine Facts (doc. 111). Myers responded in opposition to the motion for summary judgment (doc. 122).

I.    BACKGROUND and INTRODUCTION

    In the Fourth Amended Complaint (doc. 45), which is the operative pleading, Myers alleges that on September 27, 2011, while he was housed at Holmes Correctional Institution ("Holmes

---

[1] On January 8, 2014, the district court dismissed with prejudice Myers' due process claims concerning his placement in administrative confinement, his due process claims concerning the deprivation of his property, his First Amendment claims concerning his access to the courts, and his conspiracy claims (*see* doc. 52). The court dismissed without prejudice, pursuant to Heck v. Humphrey, 512 U.S. 477 (1994), Myers' claims challenging his disciplinary convictions (*see id.*).

C.I."), Sergeant Watkins assaulted, battered, and struck him while he was in restraints (doc. 45 at 15, ¶ 27). Myers alleges he was never disrespectful, disorderly, non-submissive, or threatening (*id.*). He also alleges he never disobeyed a verbal command or gave "any legal reason" for Watkins to use force (*id.*). Myers alleges the use of force occurred in the administrative confinement unit in view of cameras that monitor the unit (*id.*).

Sergeant Watkins requests that judgment be entered in his favor on several grounds (doc. 111). First, Watkins contends he is entitled to summary judgment because Myers failed to properly exhaust his administrative remedies, which is a precondition to this lawsuit, pursuant to 42 U.S.C. § 1997e(a) (*id.* at 8–15). Second, Watkins contends Myers' allegations demonstrate that the alleged use of force was de minimis; therefore, his allegations fail to state a constitutional violation, and he (Watkins) is entitled to qualified immunity (*id.* at 15–19, 22–23). Watkins also contends that Myers' recovery is limited to nominal damages, because his claims for damages against Watkins in his official capacity are barred by the Eleventh Amendment (*id.* at 6–7), and his claims for monetary damages (other than nominal damages) against Watkins in his individual capacity are barred by 42 U.S.C. § 1997e(e) (*id.* at 19–22). As explained below, the court concludes that Myers failed to properly exhaust his administrative remedies and that summary judgment in Watkins' favor is therefore warranted.

II. EXHAUSTION

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a § 1983 action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "'[W]hen a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit.'" Bryant v. Rich, 530 F.3d 1368, 1372–73 (11th Cir. 2008) (quoting Johnson v. Meadows, 418 F.3d 1152, 1156 (11th Cir. 2005)). The PLRA requires "proper exhaustion" that complies with the "critical procedural rules" governing the grievance process. Woodford v. Ngo, 548 U.S. 81, 95, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006).

"A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322–23 (11th Cir.

2007)). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." *Id.*

"[A] defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." Turner, 541 F.3d at 1082. "As a result, deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Id.* "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*

Second, "[i]f the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* (citing Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007); Roberts v. Barreras, 484 F.3d 1236, 1240 (10th Cir. 2007)). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." Jones, 549 U.S. at 218 (quoting Woodford, 548 U.S. at 88). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

In Florida, generally, a prisoner must: (1) file an informal grievance with a designated prison staff member on Form DC6-236; (2) file a formal grievance with the institution's warden on Form DC1-303; and then (3) submit an appeal to the Central Office of the Secretary on Form DC1-303. *See* Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing Fla. Admin. Code rr. 33–103.005–103.007).

Informal grievances must be received by the reviewing staff member "within a reasonable time" of when the incident or action being grieved occurred. *See* Fla. Admin. Code r. 33-103.011(1)(a). "Reasonableness" is determined on a case-by-case basis. *See id.* A written response to an informal grievance must be provided to the inmate within 10 calendar days following receipt of the grievance. *See id.*, 33-103.011(3)(a).

Formal grievances must be received by the warden, assistant warden, or deputy warden no later than 15 calendar days from (1) the date of the response to the informal grievance, or (2) the date on which the incident or action being grieved occurred if an informal grievance was not filed pursuant to the circumstances permitting an inmate to bypass the informal grievance step, discussed *infra*. *See* Fla. Admin. Code r. 33-103.011(1)(b). The warden, assistant warden, or deputy warden must respond to the grievance within 20 calendar days following receipt of the grievance. *See id.*, 33-103.011(3)(b).

Grievance appeals to the Central Office must be received within 15 calendar days from the date of the response to the formal grievance. *See* Fla. Admin. Code r. 33-103.011(1)(c). The Central Office must respond to the grievance appeal within 30 calendar days form the date of receipt of the grievance. *See id.*, r. 33-103.011(c).

The time limit for responding to grievances and appeals may be extended for a reasonable period agreeable to both parties if the extension is agreed to in writing by the inmate. *See* Fla. Admin. Code r. 33-103.011(4). Unless the inmate has agreed in writing to an extension, expiration of a time limit at any step in the process entitles the inmate to proceed to the next step of the grievance process. *See id.* If this occurs, the inmate must clearly indicate this fact when filing at the next step. *See id.* If the inmate does not agree to an extension of time at the Central Office level of review, he is entitled to proceed with judicial remedies as he would have exhausted his administrative remedies. *See id.* The Central Office will nevertheless ensure that the grievance is investigated and responded to, even though the inmate has not agreed to an extension. *See id.*

At the time of the alleged use of force in this case, FDOC grievance procedures provided that an inmate could bypass the informal grievance step and proceed directly to the formal grievance step if he was submitting an emergency grievance, a grievance of reprisal, or a grievance of a sensitive nature. *See* Fla. Admin. Code r. 33-103.005(1), (3). The grievance procedures additionally provided

that an inmate could bypass the informal and formal grievance steps and proceed directly to the Central Office step if he was submitting an emergency grievance, a grievance of reprisal, or a grievance of a sensitive nature. *See id.* r. 33-103.007(6). When an inmate submitted a grievance of one of these three types directly to the Central Office, he was required to: (1) "state at the beginning of Part A of Form DC1–303 that the grievance concerns either an emergency, or is a grievances of a reprisal, or a grievance of a sensitive nature"; and (2) "clearly state the reason for not initially bringing the complaint to the attention of institutional staff and by-passing the informal and formal grievance steps of the institution or facility." *See id.* r. 33-103.007(6)(a)1.–2. The grievance procedure provided that if the inmate elected to mail the grievance to the Central Office directly and bypass the institutional grievance logging/tracking process, the inmate could submit his grievance in a sealed envelope to be placed in the institutional bulk mail that was to be mailed daily to the Central Office. *See id.* r. 33-103.006(8)(e).

Upon receipt of the mailed grievance by the Central Office, the Bureau of Inmate Grievance Appeals ("Bureau") was required to review the grievance and determine the classification of the grievance and enter the same on the receipt that was returned to the inmate. *See* Fla. Admin. Code rr. 33-103.007(3), 33-103.006(8)(f)2. The Bureau then had to: (1) decide whether the grievance was timely filed by comparing the receipt date to the date of the incident or situation giving rise to the complaint, (2) examine the grievance for compliance with the FDOC's grievance procedures, (3) provide a receipt to the inmate, indicating the subject matter of the grievance according to the classification of the grievance (for example, Complaints Against Staff (harassment or improper conduct), Grievance Process (response not received), or Confinement (complaints concerning administrative confinement, privileges, and living conditions)), and (4) return the grievance to the inmate for any one or more of the reasons stated in Rule 33-103.014, without further processing. *See id.* rr. 33-103.007(3), (4)(a–d), 33-103.013. Rule 33-103.014 provided an <u>exclusive</u> list of the reasons for returning a grievance without a response on the merits. *See id.* r. 33-103.014(1). One of the listed reasons was that the inmate did not provide a valid reason for bypassing the previous level(s) of review as required, or the reason provided by the inmate was not acceptable (this evaluation was made on a case by case basis and the reasons for rejecting the complaint would vary with the facts alleged in the complaint). *See id.* r. 33-103.014(f). The Bureau was required to

respond to a direct grievance within 30 calendar days from the date of the receipt of the grievance. *See id.* r. 33-103.011(3)(c). An inmate who had a grievance returned to him for this reason could re-file utilizing the proper procedure if, upon receipt of the Bureau's notification, the filing was within time the frames set forth in Rule 33-103.011. *See id.*, r. 33-103.014(2).

Upon receipt of the direct grievance and following review of the same, if it was determined that the grievance was not an emergency grievance, a grievance of reprisal, or a grievance of a sensitive nature, the grievance had to be returned to the inmate with the reasons for return specified, and the inmate had to be advised to resubmit his or her grievance at the appropriate level. *See* Fla. Admin. Code r. 33-103.007(6)(d).

Finally, with regard to emergency grievances, upon the Bureau's receipt of an emergency grievance, the Bureau had to take the following actions as soon as possible, but no later than two calendar days following receipt: (1) review the complaint and contact staff for additional information if necessary; (2) if an emergency was found to exist, initiate action to alleviate the condition giving rise to the emergency; (3) provide a formal response to the inmate within 15 calendar days; and (4) if an emergency was not found to exist, stamp the grievance "not an emergency," sign and date the grievance, and return it to the inmate within 3 working days of receipt. *See* Fla. Admin. Code rr. 33-103.007(6)(b), (c). 33-103.011(3)(d).

III. ANALYSIS

Sergeant Watkins contends he is entitled to summary judgment because Myers' own allegations and the FDOC's records demonstrate he failed to properly exhaust his administrative remedies (doc. 111 at 8–15). Watkins contends that to properly exhaust, Myers would have had to first submit an informal grievance regarding his allegation, then submit a formal grievance (if he was not satisfied with the response to his informal grievance), and then submit an appeal to the Central Office (*id.*). Watkins asserts that the only grievances received by the Central Office from Myers during the period September 27, 2011 through August 9, 2012 (the date Myers commenced this civil rights action) are grievance log numbers 12-6-17263 and 12-6-21878 (doc. 111-5, Declaration of Shirley A. Johnson ¶ 3), but neither of these grievances placed the FDOC on notice of the allegations of excessive force at issue in this § 1983 action (doc. 111 at 12–15). Therefore, Watkins contends, Myers failed to comply with the exhaustion requirement of 42 U.S.C. § 1997e(a) (*id.*).

Case No.: 5:12cv259/MW/EMT

Myers does not allege he used the FDOC's three-step process. He states in his deposition that he sent an "emergency" grievance to the Central Office in late September 2011 through the legal mail system, and thus bypassed the Holmes C.I. grievance log-in process (Myers Dep. 40:19–51:8). Myers states the Central Office sent a response to the grievance to Holmes C.I., and Holmes C.I. then sent it to Myers in approximately November of 2011, when he was temporarily housed at the Okaloosa County Jail (Myers Dep. 41:5–43:20). Myers states the Central Office's response stated that the grievance was filed improperly (*id.*, 42:24–43:7). He states he attempted to "followup" with the Central Office by sending a grievance/response to the Central Office from the Okaloosa County Jail, but he did not receive a response from the Central Office (Myers Dep. 43:9–17). Myers states he did not further pursue the matter when he returned to Holmes C.I. (Myers Dep. 43:18–20). FDOC records demonstrate that Myers was transferred from Holmes C.I. to the Okaloosa County Jail on October 26, 2011, and he returned to Holmes C.I. on December 13, 2011 (*see* doc. 111-9 at 3).

    A.    <u>Myers' direct grievance to the Central Office dated September 27, 2011</u>

Taking Myers' version of the facts as true, the court must first determine whether the grievance he sent directly to the Central Office on September 27, 2011, satisfied the FDOC's grievance requirements. Myers provides conflicting facts as to the nature of the grievance. He stated in his deposition that he sent the grievance as an "emergency" grievance on September 27, 2011, the date of the alleged use of force (*see* Myers Dep. 41:20, 42:6–11). However, Myers submitted other evidence which shows that he sent the September grievance as an "informal grievance of a sensitive nature" (*see* doc. 20-1 at 3–4). The court will thus determine whether the grievance was properly filed as either an emergency grievance or a grievance of a sensitive nature under the Florida Administrative Code.

At the time Myers filed the grievance, the Code defined an emergency grievance as a "[g]rievance of those matters which, if disposed of according to the regular time frames, would subject the inmate to substantial risk of personal injury or cause other serious and irreparable harm to the inmate." Fla. Admin. Code r. 33-103.002(4). Myers stated in his deposition that the September grievance reported that Sergeant Watkins physically assaulted him, causing injury to his head, and that video cameras in the administrative confinement unit would show the assault (Myers

Dep. 41:20–42:1, 58:24–25).  Myers also stated in his deposition that he "assumed" that the Central Office would "send somebody to my cell to look at me" to verify whether or not he was injured (Myers Dep. 12:18–19, 41:20–42:1).  The facts reported by Myers in his grievance do not suggest that he was at substantial risk of personal injury, or that he would suffer serious and irreparable harm if he grieved Sergeant Watkins' alleged conduct at the institutional level.[2]

Further, the facts do not suggest that Myers' grievance clearly stated the reason for not initially bringing his complaint to the attention of institutional staff and bypassing the informal and formal grievances steps, as the Code required.  *See id.*, r. 33-103.007(6)(a).  Additionally, the Code provided that "[a]t no time will an inmate who is alleging that he was physically abused . . . be directed to submit his or her grievance to the staff person who is the subject of the complaint, nor will the grievance be referred to a staff person who is the subject of the complaint."  *See* Fla. Admin. Code r. 33-103.015(6).  This provision, however, authorized only bypass of the staff member(s) who committed the alleged physical abuse; it did not authorize an inmate to bypass a complete level of administrative review.  Myers' facts do not suggest that any other staff member other than Sergeant Watkins was the subject of his excessive force complaint; therefore, he was not authorized to completely bypass the institutional-level grievance procedures.

Taking Myers' facts as true, his September 27 direct grievance to the Central Office did not comply with the requirements for bypassing the informal and formal grievance steps and filing a direct emergency grievance with the Central Office.  Therefore, Myers' filing the "emergency" grievance was not "proper" exhaustion under the inmate grievance procedure.

The court will next determine whether Myers' September direct grievance to the Central Office was a "grievance of a sensitive nature."  The form for filing direct grievances, Form DC1-303, states that when an inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the sensitive nature of the grievance, he may address his grievance directly to the Central Office (*see* doc. 111-7 at 14).  The inmate must state at the beginning of Form DC1-303 that the grievance concerns a grievance of a sensitive nature.  *See* Fla.

---

[2] For example, there are no facts suggesting that Myers described the incident in such a manner as to suggest that he required immediate medical attention, or that he was unable to obtain medical treatment through the institution's sick call process.

Case No.: 5:12cv259/MW/EMT

Admin. Code r. 33-103.007(6)(a). Additionally, the inmate must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and bypassing the informal and formal grievance steps of the institution or facility. *See id.*

Here, as noted *supra*, the facts presented by the parties do not suggest that in the September direct grievance to the Central Office, Myers clearly stated the reason for not initially bringing his complaint to the attention of institutional staff and bypassing the informal and formal grievances steps, as the Florida Administrative Code required. Therefore, the September direct grievance to the Central Office did not satisfy the requirements of a grievance of a sensitive nature under the Florida Administrative Code and thus was not properly filed as such.[3]

Finally, there is no evidence that the Central Office ever received Myers' September grievance. The date the Central Office received the grievance triggered the time frames within which the Central Office was required to respond. *See* Fla. Admin. Code r. 33-103.007(6); 33-103.011(3)(c). In the absence of any facts suggesting that the Central Office received the September grievance, the Central Office's failure to respond does not excuse Myers' failure to comply with the requirements of the Florida Administrative Code.[4]

    B.    <u>Myers' direct grievance to the Central Office dated October 18, 2011</u>

---

[3] The absence of facts suggesting that Myers' September grievance to the Central Office was a proper emergency grievance or grievance of a sensitive nature distinguishes this case from cases in which the Eleventh Circuit determined that the inmate properly bypassed the informal and formal grievance steps. *See, e.g.,* <u>Dimanche v. Brown</u>, 783 F.3d 1204, 1213–14 (11th Cir. 2015) (inmate's grievance was a proper direct grievance to the Central Office where inmate stated at the beginning of his grievance that he was filing a grievance of reprisal, and the content of his grievance stated his reason for bypassing the institutional grievance process).

[4] The absence of any facts suggesting that the Central Office failed to comply with the inmate grievance procedure with regard to the September grievance distinguishes this case from cases in which the Eleventh Circuit excused an inmate's failure to follow the established inmate grievance procedure. *See, e.g.,* <u>Turner v. Burnside</u>, 541 F.3d 1077, 1083 (11th Cir. 2008) (inmate was excused from pursuing further administrative remedies after the warden ripped up his grievance, instead of responding in writing as Georgia's inmate grievance procedure required); *see also, e.g.,* <u>Jackson v. Georgia</u>, — F. App'x —, 2015 WL 3939067, at *4 (11th Cir. June 29, 2015) (unpublished) (inmate was excused from pursuing further administrative remedies because prison officials' lack of response to his informal grievance did not comply with the inmate grievance procedure)

Case No.: 5:12cv259/MW/EMT

When Myers filed an earlier amended complaint with this court, he attached a copy of a grievance he sent to the Central Office on October 18, 2011 (*see* doc. 20-1 at 1–4).[5] Myers filed the grievance on Form DC6-236, the form for filing <u>informal</u> grievances, and labeled the grievance "INFORMAL GRIEVANCE" and "Informal Grievance of a Sensitive Nature" (*id.*). The grievance stated:

> This prisoner grieves your denial to respond [sic] in a timely manner and your conceding the complaint as true and correct and further stipulates that prisoner has never received a response to informal grievance of a sensitive nature filed with this administration approximately Sept. 29, 2011, redressing physical assault suffered while being restrained in handcuffs on administrative confinement perpetrated by Sgt. Watkins employed by the State of Florida by and through the Florida Department of Corrections, Holmes Correctional Institution, commited [sic] while in the course of his duties, intentionally, intelligently, and voluntarily while clothed in a professional capacity and acting in a person [sic], unprofessional chacter [sic] with malice and intent to do great bodily harm as cruel and unusal [sic] punishment, condoned and encouraged by this administration as with foreknowledge you have failed, denied, and/or refused to remove or extract this violative, unstable and unprofessional officer/employee from this compound to prevent events from occuring [sic] again as previously grieved on approximately August 14, 2011 by this prisoner, having made you aware of this employee's unprofessional conduct, abusive and threatening demeanor and violative intentions you chose to ignore these claims and issues incorporating yourselves and conspiring and active parties [sic] to the felonious and physically abusive treatment, as condoning and encouraging such treatment of prisoners on a daily basis.

(doc. 20-1 at 3–4). In the grievance, Myers requested compensation in the amount of $30,000.00 for the injuries caused by Sergeant Watkins, and that Sergeant Watkins be suspended (*id.*).

The grievance was received by the Bureau on November 2, 2011, as indicated by the date stamp on the first page of the grievance (*see* doc. 20-1 at 3). A representative of the Bureau sent Myers a Memorandum dated November 3, 2011, stating, in relevant part:

> The grievance procedure requires that you: 1) use proper forms when initiating a grievance, and 2) that you initiate your grievance at the appropriate level of the procedure as outlined in Chapter 33-103, subsections .005 informal grievance; .006 formal grievance—institution or facility; and .007 appeals to the Office of the Secretary. Your communication to this office is returned to you for reason 1 or 2 or

---

[5] Myers was not transferred from Holmes C.I. until October 26, 2011.

Case No.: 5:12cv259/MW/EMT

> both as applicable. You may re-initiate your complaint following proper procedures. You must be within the appropriate time frame for your appeal to be accepted.

(doc. 20-1 at 2).

The facts presented by the parties demonstrate that Myers did not file the October 18, 2011 direct grievance on the proper form, Form DC1-303, and instead filed it on Form DC6-236. The facts further demonstrate that Myers did not clearly state the reason for not initially bringing his complaint to the attention of institutional staff and bypassing the informal and formal grievances steps, as Rule 33-103.007(6)(a) required. Taking Myers' version of the facts as true, the Central Office properly returned Myers' October 18 direct grievance, because it did not comply with the requirements of the inmate grievance procedure. Therefore, Myers' filing this grievance was not "proper" exhaustion under the Florida Administrative Code.

      C.    <u>Myers' informal grievance to the warden dated March 21, 2012</u>

The facts show that Myers filed an informal grievance to the warden on March 21, 2012 (*see* doc. 111-7 at 16). He filed the grievance on Form DC6-236, the form for filing informal grievances, and he labeled the grievance "INFORMAL GRIEVANCE" (*id.*). Myers challenged a disciplinary conviction for possession of contraband (*id.*). He did not mention a use of force, let alone the alleged use of force by Sergeant Watkins on September 27, 2011 (*see id.*). The Assistant Warden received the informal grievance on March 26, 2012, and assigned it log number 0312-107-116 (*id.*). On March 27, 2012, the Assistant Warden returned the grievance to Myers without response, on the ground that challenges to disciplinary convictions must be submitted on the formal grievance form, DC1-303 (*id.*). The Assistant Warden notified Myers that if he desired administrative review of his complaint, he could correct the deficiency and re-file the grievance if, upon receipt of the returned grievance, the re-filing was within the allowable time frames as set forth in Rule 33-103.011 (*id.*). It appears that Myers re-filed the same grievance, but it was denied on the ground that his disciplinary conviction had already been dismissed (*id.* at 17).

The facts demonstrate that this round of grievances did not concern the alleged use of force by Sergeant Watkins on September 27, 2011. Therefore, it did not satisfy the exhaustion requirement for Myers' excessive force claim.

      D.    <u>Myers' formal grievance to the warden dated April 4, 2012</u>

Myers filed a formal grievance to the warden on April 4, 2012, stating the following:

> The proper method of identifying a violation and resolving the issue is redress of the grievance. Unproffessional [sic], unethical, and immoral tactics and procedures are continued to be utilized against me as reprisal from Mr. Hodges, Inspector Coffey, Sgt. Moore, Sgt. Watkins, and Assistant Warden Flowers. For stealing my personal property, removing records from my personal file, and have [sic] me assaulted and battered while I was in handcuffs on A/C confinement. Now you are allowing a [sic] administration the permission to pilfer through whats [sic] left of my personal property destroying my material and art work collected from my only son over 9 years and return my property destroyed and in a shambles not organized and in files as when you started this harassment. I am being held for "U.C.C." scheme where the combine [sic] mental capacity of the involved parties can't develope [sic] the understanding that that abbreviation is for a Federal and International Code, a Florida statute and if you continue to allow the incouragable [sic] rogue employees to run rampid [sic] and uncontroled [sic] the repurcussions [sic] with immediate liquidation of all assets to attempt to compesate [sic] for damages caused by "public servants." I have never filed a fraudulent claim against anyone much less a [sic] unprofessional employee. I do not use schemes to conduct litigation in "Law Merchant." I have been extremely tollerant [sic] to ignorant employees. U.C.C. is a Florida Statute and any reference material is in no way unlawful or illegal. I am left with no remedy or recourse other than to file a civil action other than at the state level. The Constitutional violations must be addressed and the arrogant and violative employees being allowed to go unaccountable for breaking clearly established laws and undeniable rights even of prisoners with which they are interfereing [sic] and preventing from justice. Release me from confinement. Transfer me to Blackwater or Okaloosa C. [sic]

(doc. 111-7 at 14).

The warden received the grievance on April 6, 2012, and assigned it log number 1204-107-014 (*see* doc. 111-7 at 14). The warden denied the grievance on April 25, 2012, on the following grounds:

> The acts which you have described are not acts of reprisal, but legal acts as described on documentation. The property being removed from your possession was identified as property belonging to either a State Correctional Facility, another inmate's property that you received unauthorized from unauthorized sources, or material you received through approved sources that was determined to be contraband after your receipt of the documents. You were given verbal instructions that you were not to be in possession of any UCC Forms Article 9 form, including but not limited to any financing statement, whether printed, copied, typed or handwritten or any document concerning a scheme involving an inmate's "strawman," House joint resolution 192 of 1933, "the Redemptive Process" "Acceptance of Value presentments" or

>document indicating copyright or attempted copyright of an inmate's name absent prior written authorization from the Warden. The papers belonging to the state facility were in your unauthorized possession, because to the knowledge of this writer you were never assigned to that institution. Also, your so called other personal property or legal papers removed, either contained other inmates names or information pertaining to other inmates' legal cases. Both of which are contraband, when possessed by you, by definition and rule. Your failure to obey and follow the rules, such as attempts to manipulate unsuspecting people on the outside into your UCC attempts, to send you forms that are not authorized or start a business is not an infringement of your rights. They are a violation of the Departments [sic] rules. No one at this institution has any desire to infringe on any rights you have, but we are required to enforce the rules to the best of our ability and knowledge which we will do. All documentation dealing with removal of property in your unauthorized possession is contained in your current property file.

(doc. 111-7 at 15).

Myers filed a 12-page appeal to the Central Office, but he did not mention Sergeant Watkins or an alleged use of force (*see* doc. 111-7 at 2–13).[6] The Central Office received the appeal on May 24, 2012, and assigned it log number 12-6-17263 (*see id.* at 2). The Central Office denied the appeal on June 21, 2012, on the following grounds:

>The response that you received at the institutional level has been reviewed and is found to appropriately address the concerns that you raised at the institutional level.
>
>You have raised several issues in your appeal to this office that were not presented at the institutional level and as such will not be addressed by this office.

(doc. 111-7 at 1).

---

[6] Myers grieved the following issues: (1) the warden's failure to timely respond to his formal grievance, (2) unidentified correctional officers' failure to provide him a pen, (3) unidentified officers' failure to make a copy of Chapter 33 of the Florida Administrative Code available to him, (4) confiscation of his property, including certain documents, (5) issuance of "bogus" disciplinary reports, and (6) tampering with his "legal mail" and confiscating his "legal/lawful documents" (*see* doc. 111-7 at 2–11). As relief, he sought the following: (1) removal of Inspector R. Coffey from his position as institutional inspector, (2) reprimand of "the listed employees contained in all my litigation," (3) return of his confiscated documents, (4) a formal public apology to his family and ex-fiancee for fabricating reports that he engaged in illegal activities, and for threatening his family, friends, and loved ones with criminal charges for assisting him in his litigation activities, (5) expungement of all disciplinary reports and restoration of all gain time and "jail credit," (6) transfer to Blackwater River Correctional Facility, and (7) release from administrative/disciplinary confinement (doc. 111-7 at 2–13).

Case No.: 5:12cv259/MW/EMT

Because Myers failed to present the issue of Sergeant Watkins' alleged use of force to the Central Office in his grievance appeal, this round of grievances did not satisfy the exhaustion requirement as to his excessive force claim.

E.     Myers' formal grievance to the warden dated May 25, 2012

Myers filed a formal grievance to the warden on May 25, 2012 (*see* doc. 111-8 at 4–5).  In the grievance, he challenged a disciplinary conviction for possession of contraband (*id.*).  He did not mention a use of force, let alone the alleged use of force by Sergeant Watkins on September 27, 2011 (*see id.*).  The warden received the formal grievance on May 29, 2012, assigned it log number 1205-107-056, and denied it on June 19, 2012 (*see id.* at 4–6).  Myers filed a grievance appeal to the Central Office, and again did not mention a use of force (*see id.* at 2–3).  The Central Office received the appeal on July 13, 2012, assigned it log number 12-6-21878, and denied it on July 26, 2012 (*see id.* at 1–3).

The facts demonstrate that this round of grievances did not concern the alleged use of force by Sergeant Watkins on September 27, 2011.  Therefore, it did not satisfy the exhaustion requirement as to Myers' excessive force claim.

IV.    CONCLUSION

For the reasons discussed *supra*, the court concludes that taking Myers' version of the facts as true, he did not properly exhaust administrative remedies as to Sergeant Watkins' alleged use of excessive force on September 27, 2011.  Myers' sending direct grievances to the Central Office in September and October of 2011 was not in accord with the inmate grievance procedures. The institutional-level grievance step was available to Myers at the time he sent his first direct grievance to the Central Office on September 27, 2011, and it was available after the Central Office rejected his second direct grievance, on November 3, 2011.[7] Myers utilized the institutional-level grievance step on March 21, 2012 (three months after he returned to Holmes C.I. from the Okaloosa County Jail), but he did so to grieve issues unrelated to Sergeant Watkins' use of force on September 27,

---

[7] At that time, Myers could have filed an informal grievance regarding Sergeant Watkins' conduct on September 27, 2011, asserting that he was filing the informal grievance within a "reasonable" time due to his attempts to grieve the issue directly to the Central Office, his transfer to the Okaloosa County Jail, and his not receiving a response from the Central Office until November 3, 2011.

2011. Myers also utilized the institutional-level grievance step on April 4, 2012, and he mentioned Watkins' alleged use of force in that grievance, but upon the warden's denial of that grievance, Myers did not present the use of force issue to the Central Office in his grievance appeal. Myers utilized the institutional-level grievance step again on May 25, 2012, but he did so to grieve issues other than Sergeant Watkins' alleged use of force on September 27, 2011.

Myers' failure to utilize the available grievance steps even after being given the opportunity to do so constitutes a failure to properly exhaust available administrative remedies. Further, although generally § 1983 claims that are unexhausted are dismissed without prejudice to a prisoner's re-filing after proper exhaustion, where future attempts to exhaust would be absolutely time-barred under the administrative grievance procedures, which is the case here, dismissal with prejudice is proper.[8] *See* Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005) (failure of inmate to timely grieve defendants' conduct required dismissal of federal suit with prejudice, when inmate did not follow internal grievance procedure initially, and upon inmate's subsequent filing of an out-of-time grievance, prison administrators found no grounds or good cause to authorize untimely grievance); Bryant, 530 F.3d at 1375 n.11; *see also, e.g.*, Mason v. Bridger, 261 F. App'x 225, 229 (11th Cir. 2008) (unpublished) (affirming district court's grant of summary judgment in favor of defendants where inmate failed to properly exhaust all available administrative remedies; inmate not only filed untimely grievances without alleging good cause for doing so, but also failed to appeal the denials of those grievances); Simpson v. Holder, 200 F. App'x 836, 840 (11th Cir. 2006) (unpublished) (affirming district court's dismissal of complaint with prejudice as unexhausted and procedurally defaulted where inmate never filed a timely or untimely grievance and would be time-barred from doing so under Florida administrative rules); Isaac v. Donald, 211 F. App'x 859, 862 (11th Cir. 2006) (unpublished) (suit under section 1983 was barred by section 1997e(a) where inmate failed to exhaust administrative remedies in a timely way, and he failed to provide prison officials with reason to excuse his delay);[9] Saulsberry v. Kent, No. 3:12cv167/LAC/EMT, 2013 WL

---

[8] In light of the dispositive nature of the court's ruling on Sergeant Watkins' exhaustion defense, the court need not address the additional defenses asserted in Watkins' motion for summary judgment.

[9] The undersigned cites unpublished Eleventh Circuit opinions only as persuasive authority and recognizes that the opinions are not considered binding precedent. *See* 11th Cir. R. 36-2.

Case No.: 5:12cv259/MW/EMT

593738, at *8 (N.D. Fla. Jan. 30, 2013) (unpublished) (dismissing case with prejudice where inmate failed to properly exhaust available administrative remedies prior to filing federal lawsuit, and any future attempt to exhaust would be absolutely time-barred), *Report and Recommendation Adopted by* Saulsberry v. Kent, 2013 WL 593733 (N.D. Fla. Feb. 15, 2013); Ory v. McHugh, No. 5:07cv291/MCR/EMT, 2008 WL 2756463, at *6 (N.D. Fla. July 14, 2008) (unpublished) (dismissing case with prejudice where inmate never filed or attempted to file timely or untimely grievance and would be time-barred from doing so under Florida's administrative rules).

V.    STATE LAW CLAIMS

      To the extent Myers asserts state law claims, those claims should be dismissed without prejudice to his pursuing them in state court. It is well established that once a plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over any state claims against a defendant. *See* Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997). Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. *See also* United Mine Workers v. Gibbs, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 1138–39, 16 L. Ed. 2d 218 (1966). Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. Baggett, 117 F.3d at 1353 (citing Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994); Exec. Software N. Am. v. United States Dist. Court, 15 F.3d 1484, 1493 (9th Cir. 1994); New England Co. v. Bank of Gwinnett Cnty., 891 F. Supp. 1569, 1578 (N.D. Ga. 1995); Fallin v. Mindis Metals, Inc., 865 F. Supp. 834, 841 (N.D. Ga. 1994)). The Eleventh Circuit has encouraged district courts to dismiss any remaining state claims when the federal claims have been dismissed prior to trial. *See* Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004).

      Taking these factors into account in this case, the court concludes that any state law claims asserted by Myers should be dismissed to permit him to pursue them in a more appropriate forum. While it would be convenient for Myers to continue litigating his case in this court, this court has a substantial number of original jurisdiction cases awaiting review, and neither judicial economy nor fairness to other litigants support retaining jurisdiction of Myers' state claims and delaying justice

Case 5:12-cv-00259-MW-EMT   Document 125   Filed 07/17/15   Page 17 of 18

Page 17 of 18

in other cases. Furthermore, the state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so. Moreover, the supplemental jurisdiction statute contains a tolling provision. *See* 28 U.S.C. § 1367(d) (state claims asserted in federal court along with "related" federal claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed"); Personalized Media Commc'ns, LLC v. Scientific-Atlantic, Inc., 493 F. App'x 78, 82 n.1 (11th Cir. 2012) ("'Section 1367(d), giving the plaintiff at least 30 days to re-file in state court after a federal court declines to exercise supplemental jurisdiction, removes the principal reason for retaining a case in federal court when the federal claim belatedly disappears.'") (citation omitted). In Krause v. Textron Fin. Corp., 59 So. 3d 1085 (Fla. 2011), the Supreme Court of Florida held that Florida state law claims are tolled while they are pending in federal court, and the plaintiff shall have 30 days after dismissal by the federal court to re-file in state court. *See id.* (citing 28 U.S.C. § 1367). This is specifically "to prevent the limitations period from expiring" on the Florida state law claim while it is being pursued in federal court in conjunction with the federal claim. *Id.* at 1091. Therefore, Myers' pursuit of his state law claims in state court would not be prejudiced by this court's declining to exercise supplemental jurisdiction over his state law claims.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Defendant Sergeant Watkins' motion for summary judgment (doc. 111) be **GRANTED** based upon Plaintiff's failure to properly exhaust administrative remedies as required under 42 U.S.C. § 1997e(a);

2. That Plaintiff's state law claims be **DISMISSED without prejudice** to his pursuing them in state court; and

3. That the clerk of court be directed to enter judgment accordingly.

At Pensacola, Florida, this 17th day of July 2015.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**